## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

GABRIEL JOHN SEDILLO, SR.,

        Applicant,

v.                                  CV 06-0640 WJ/WPL

TIM HATCH, WARDEN,

        Respondent.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before me on Sedillo's First Supplemental Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. 61), Respondent's answer and three motions to dismiss dated December 14, 2007, January 23, 2009, and November 6, 2009 (Doc. 65 and Doc. 64, 100, 119), and supplemental briefing by the parties addressing the state court's resolution of Sedillo's alibi claim (Doc. 124, 127 and 132).  I begin with a brief summary of the complicated procedural history of this case.

### PROCEDURAL BACKGROUND

On May 22, 2003, Sedillo was convicted in state court of one count of first degree murder and three counts of tampering with evidence in connection with the death of Wayne Sharp on January 17, 2002.  (Record Proper I at 1, 286.)[1]  After unsuccessfully pursuing a direct appeal and state habeas relief, Sedillo filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on July 17, 2006.  (Doc. 1.)  Judge Smith, the magistrate judge assigned to the case at that

---

[1] There are two state court records in this case.  I will refer to the record pertaining to the 2003 jury trial as Record Proper I (RP I) and to the record pertaining to the 2009 habeas evidentiary hearing as Record Proper II (RP II).  Because the pages in RP II are not numbered, documents are cited by date and title.

time, recommended that the petition be denied.  (Doc. 26.)  Notably, with regard to Sedillo's claim

of ineffective assistance of counsel based on trial counsel's failure to investigate and procure a key

alibi witness, Judge Smith found Sedillo's allegations conclusory and insufficient to demonstrate

deficient performance or prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984).  (*See id.*

at 22.)  In objecting to Judge Smith's recommendations, Sedillo detailed the testimony that Yvette

Chacon, the alibi witnesses, would have provided.  He claimed that she "would of [sic] said she was

with Petitioner outside the shop, talking for a long time; to vouch for Mr. Sedillo had [sic] never left

the shop the day of the murder and that he did not return from anywhere do to the fact [sic] Ms.

Chacon was talking to Mr. Sedillo."  (Doc. 30 at 13.)  Given the circumstances of the case and the

detail provided by Sedillo, Judge Johnson referred the matter back to Judge Smith for further review.

(Doc. 33.)

 Judge Smith appointed counsel for Sedillo and ordered Sedillo to file an amended petition

substantively supporting the claim.  (*See* Doc. 34, 45, 46.)  Sedillo filed his amended petition on

November 15, 2007.  (Doc. 61.)  On December 14, 2007, Respondent filed an answer and a motion

to dismiss asserting that Sedillo had not exhausted his alibi claim in state court, resulting in a mixed

petition that should be dismissed, and also that Sedillo had made unsubstantiated allegations and had

failed to state a constitutional claim.  (Doc. 64, 65.)  On March 11, 2008, Judge Smith held an

evidentiary hearing to determine whether there was a factual basis to support the claim.  (*See* Doc.

87.)  Counsel for Sedillo was unable to subpoena Chacon to appear at the hearing.  In the course of

discussing how best to proceed to obtain Chacon's testimony, the parties agreed to a stay of the

federal matter to allow Sedillo to exhaust the claim in state court.  On March 20, 2008, Judge

Johnson stayed the federal case and ordered "Petitioner [to] pursue this claim in state court

expeditiously and return to this Court within a reasonable time."  (Doc. 88.)

In August 2008, Sedillo asked the Sixth Judicial District Court to hold an evidentiary hearing on his claim that trial counsel was ineffective for failing to adduce alibi evidence, asserting that previously both the state district and supreme courts had summarily denied state habeas relief without addressing the alibi claim. (*See* Doc. 92, Ex. 1.) This hearing was originally scheduled for December 3, 2008 but, at Sedillo's request, was postponed until February 11, 2009. (*See* Doc. 94, 98.) On July 31, 2009, the district court denied Sedillo's ineffective assistance claim and on September 10, 2009 the New Mexico Supreme Court denied certiorari. (*See* Doc. 110 Ex. 1, 112 Ex. 1.) While the matter was pending in state court, Judge Smith retired and I was assigned as the magistrate judge in the federal case. Also while the matter was pending in state court, Respondent filed two additional motions to dismiss, arguing that Sedillo had failed to pursue his claim expeditiously in state court. (*See* Doc. 100, 119.) On October 5, 2009, I set a briefing schedule for the parties to address any issues they wished to raise on review of the state district court's order. For the reasons that follow, I recommend that Sedillo's amended petition be denied and Respondent's motions to dismiss be denied as moot.

## SEDILLO'S AMENDED PETITION

### *Standard of Review*

When a state court has adjudicated a petitioner's claims on the merits, the petitioner is entitled to federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). The federal law must be clearly established by the Supreme Court at the time of the state court judgment. *See Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006). A state court decision is contrary to clearly

established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Douglas v. Workman*, 560 F.3d 1156, 1170 (10th Cir. 2009) (internal citations omitted).  A state court decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (internal citations omitted).  The state court's findings of fact are presumed correct unless rebutted by the petitioner by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).

To establish ineffective assistance of counsel, a habeas petitioner must satisfy both parts of the two-part test articulated by the Supreme Court in *Strickland*.  First, he must show that counsel's performance was deficient.  466 U.S. at 687.  This requires a showing "that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment."  *Id.* Judicial scrutiny of counsel's performance is highly deferential; thus, he must overcome the presumption that the challenged action might be considered sound trial strategy.  *Id.* at 689.  Second, the petitioner must show that counsel's deficient performance was prejudicial.  *Id.* at 687.  This requires showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Id.* at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id.*

***State Evidentiary Hearing***

The state district court held an evidentiary hearing on February 11, 2009.[2]  At the hearing Yvette Chacon testified that she saw Sedillo in the early evening on the day of the murder.  She had

---

[2] The following account of testimony is taken from the CD audio recording of the February 11, 2009 hearing.

4

already been drinking since the early morning. Around 7:00 or 8:00 a.m. Elias Negron picked her up to go get more beer. Chacon estimated that they consumed at least a twelve pack between them that day. Around 4:00 or 5:00 p.m. they went to talk to a friend in Bayard, a man named Martinez. Chacon stated that they went to "that guy's house," but later stated that "they used to work on vehicles" and it could have been an auto repair shop. When Negron went inside Sedillo came out and talked to Chacon. Chacon testified that she had known Sedillo since they were young; they had grown up together. There was nothing unusual about Sedillo's appearance that day; she could not remember exactly what he was wearing but believed he was dressed nice like he always was and was not messy, dirty or disheveled. Chacon remembered that they talked about how Sedillo had been, and "you know it had been a long time that I hadn't seen him and then we talked a little about his kids. It was just small talk. That was about it." They spoke for fifteen or twenty minutes. Chacon testified that Sedillo did not seem upset, frightened, agitated, worried or scared. By the time she saw Sedillo, Chacon was not intoxicated but was "feeling good." She was not wearing a watch and stated that time did not matter to her that day. She remembered that it was still daytime when she saw Sedillo but did not remember that it was winter.

Chacon also testified that two investigators for the defense contacted her before the trial. She remembered they knocked on her door and wanted to question her about Sedillo but "it was none of my business, I didn't see anything so I didn't feel that they should question me about anything." She did not provide them any information and stated that she "didn't let them talk very much" to explain what information they thought she had. She explained that she didn't want to get involved because she "didn't know anything and didn't think anything I had to say was going to help him." She also testified that if she had known something that would have helped Sedillo she would have come forward and testified at trial. Although this portion of her testimony was somewhat

5

confusing, it appears that investigators for the defense contacted her two times—once before trial and once after trial, or twice before trial.  Chacon confirmed that the testimony she gave at the evidentiary hearing was the same testimony she would have given had she been subpoenaed to testify at trial.

Sedillo also called Michael Jimenez, the lead investigator for the prosecution.  Jimenez testified that the distance from Martinez's auto shop to the location of the body was about eight and a half miles.  He estimated it would take twenty to twenty-four minutes to travel the distance round trip.

### State Court Decision

The state district court found that Chacon was "with the Defendant in the early evening, 'about 4:00 p.m. or 5:00 p.m.'"  (Doc. 110 Ex. 1 at ¶ 3A.)  She had been drinking since the early morning hours before being picked up by Negron around 7:00 or 8:00 a.m.  (*Id.* at ¶ 3B.)  They acquired more alcohol and continued to drink throughout the day.  (*Id.* at ¶ 3C.)  She denied being intoxicated but stated that she had been "partying all day and she was feeling good at the time she talked with Defendant."  (*Id.*)  Chacon was not wearing a watch.  She claimed it was still light out when she talked to Sedillo but she did not remember it was winter.  (*Id.* at ¶ 3D.)  Chacon claimed that she and Negron left Hurley to go back to Bayard "around 4:00 p.m. *OR* 5:00 p.m. to go to 'a guy's house' and while there, she was talking to the Defendant for '15 *maybe* 20 minutes' outside of a residence around 4:00 p.m. *OR* 5:00 p.m."  (*Id.* at ¶ 3E.)  The district judge noted that "[i]t appears her perception of time could have been tainted by use of alcohol all day long."  (*Id.* at ¶ 3D)  He also observed that "[t]he testimony was not that the contact with Defendant was *between* 4:00 and 5:00; it was either around 4:00 or 5:00."  (*Id.* at ¶ 3E.)

The district court also found that Chacon "admitted she was contacted by persons

representing the Defendant on two occasions before the murder trial and one time after the murder trial and refused and failed to answer any inquiries, claiming she did not know anything." (*Id.* at ¶ 3F.)[3]  The court found that, even though Chacon stated at the evidentiary hearing that she would have come forward if it could have helped Sedillo, she had not previously indicated a willingness to testify for Sedillo. (*Id.*)

Because Chacon's ability to provide an alibi for Sedillo depended on the timing of events, the district judge reviewed some of the trial testimony.  He noted that one of the boys who found the body of the victim had testified that they called in their discovery around 4:00 p.m.  (*Id.* at ¶ 4.) Sam Martinez had testified that Sedillo left in the Blazer implicated in the murder and returned three to four hours later, around 4:30 to 5:30 p.m., but it was still light outside.  (*Id.* at ¶ 5.)  Lydia Valencia had testified that she saw Sedillo with Sam Martinez and another man at a carwash with the Blazer around 4:15 to 4:30 p.m.  (*Id.* at ¶ 6.)  The district court also noted that, contrary to Sedillo's interpretation, witness Peter Alcorta testified that he and Martinez washed the Blazer, but did not testify that Sedillo was not at the carwash.  (*Id.*)

The district court concluded that Chacon's testimony at the evidentiary hearing "did not substantiate the claims that Defendant made in his federal habeas corpus proceeding."  (*Id.* at ¶ 7.) The court concluded that it was not objectively unreasonable for Sedillo's trial counsel not to subpoena or call Chacon as a witness, considering her lack of cooperation and counsel's inability to find out what she knew.  (*Id.* at ¶ 8.)  He further concluded that even if counsel's failure to subpoena Chacon was unreasonable, her testimony was "equivocal at best," and Sedillo had failed to establish a reasonable probability that the result of the trial would have been different, had she

---

[3] This paragraph is misnumbered as 3D in the state court's order.

been called.  (*Id.* at ¶ 9.)  Accordingly, the district court denied Sedillo's claim for ineffective assistance of counsel.

*Analysis*

Counsel for both parties submitted briefs addressing the state court's decision.  I first note that the state judge correctly identified the governing standard, even though he did not cite *Strickland*.  *See Webber v. Scott*, 390 F.3d 1169, 1174 (10th Cir. 2004) (noting that "[d]eference is accorded to a state court result even when the state court fails to discuss any federal law rationale for its decision or cite to any federal authority").  The question, then, is whether the state court's application of this standard was unreasonable.  The Supreme Court recently reiterated that the question for a federal court reviewing a state court decision under 28 U.S.C. § 2254 is not whether the federal court believes the state court's determination under *Strickland* "was incorrect but whether that determination was unreasonable—a substantially higher threshold."  *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009).

Sedillo contends that the state district court erred in finding 1) that the trial testimony of Sam Martinez was that Sedillo left in the vehicle and returned three to four hours later at around 4:30 p.m. to 5:30 p.m. because Martinez never established when Sedillo left the premises; 2) that Sedillo could have been at the carwash because Peter Alcorta testified unequivocally that Sedillo was not there; and 3) that Chacon's explanation as to how she remembered that her conversation with Sedillo was on the day of the murder was incomprehensible because she testified that it was the same day, or the following day, that she heard news of the murder.  (*See* Doc. 24 at 9-10, 12.)

The state court's findings of fact are entitled to a presumption of correctness.  *See* 28 U.S.C. § 2254(e)(1).  Sedillo has not overcome this presumption with clear and convincing evidence.  *See id.*  First, Martinez testified that the victim and Luis Rosales, Sedillo's co-defendant, left in the

Blazer and after they left he could not find Sedillo anywhere in the shop. (CD recording of 5/21/2003 proceeding.) Rosales and Sedillo returned in the Blazer three or four hours later at around 4:30 or 5:30 p.m. (*Id.*) Although Martinez did not see Sedillo leave, one can infer from Martinez's testimony that Sedillo left with Rosales and the victim in the Blazer. Sedillo has not pointed to clear and convincing evidence that Sedillo did not leave in the Blazer with Rosales and the victim. Second, Sedillo misinterprets Peter Alcorta's testimony. The district judge was correct: Alcorta did not say that Sedillo was not at the carwash. On direct examination Alcorta testified that he and Martinez and Sedillo washed the Blazer. On cross, the defense asked, "Isn't it true that [Sedillo] did not help, that it was only you and [Martinez] that did the washing of the Blazer?" Alcorta responded that he did not remember but when shown a transcript of his testimony from Luis Rosales's trial, conceded, "well then I guess it was just me and Sammy." On redirect, when the prosecution asked whether or not Sedillo was helping, Alcorta responded "I don't think he was. I think it was just me and Sammy." This testimony suggests that Sedillo did not help wash the Blazer but it does not establish by clear and convincing evidence that he was not at the carwash. Finally, Sedillo's argument regarding whether Chacon was able to connect her conversation with Sedillo to the day of the murder is inapposite. Even assuming that Chacon's contact with Sedillo was on the day of the murder, her testimony does not establish deficient performance on the part of trial counsel or prejudice to Sedillo.

Sedillo also contends that the state district court erred in concluding that trial counsel's failure to subpoena or call Chacon as a witness at the murder trial was not objectively unreasonable. (Doc. 124 at 12.) In his supporting brief, Sedillo argues that lack of cooperation is not an excuse for failing to procure a recalcitrant witness, and trial counsel's "complete failure to interview and *call* any alibi witnesses constitute(s) ineffective assistance of counsel." (*Id.*, citing *Holmes v.*

*McKune*, No. 01-3004, 2003 WL 220496, *10 (10th Cir. Jan. 31, 2003) (emphasis in brief).)  In his reply brief, Sedillo insists that trial counsel's investigation was inadequate but emphasizes that "[i]t is the failure to procure Chacon's testimony at trial that constitutes the ineffective assistance of counsel." (Doc. 132 at 2.)  However, Sedillo has failed to prove that trial counsel knew anything about the potential content of Chacon's testimony such that counsel's failure to subpoena her would have been unreasonable.

Chacon's testimony at the evidentiary hearing established that trial counsel did attempt to investigate the potential alibi witness and that Chacon refused to speak with investigators for the defense on at least two occasions.  The state district judge found that defense counsel did investigate the possible alibi witness and that it was not "objectively unreasonable for Defendant's attorney not to subpoena or call Yvette Chacon as a witness . . . considering her lack of cooperation and counsel's inability after two efforts through his investigator to find out what she knew." (Doc. 110 Ex. 1 at ¶ 8.)  There is no evidence that defense counsel nevertheless knew the nature of Chacon's testimony and therefore should have subpoenaed her, despite her lack of cooperation.[4]  Although

---

[4] Sedillo attempted to attach the defense investigator's notes, which he had not introduced at the state evidentiary hearing, to the memorandum of proposed findings and conclusions that his counsel filed following the evidentiary hearing.  After the district judge pointed out that the notes were not offered into evidence and were not made part of the record at the evidentiary hearing, counsel for Sedillo agreed to withdraw them from the memorandum and the district judge ordered them stricken from the record.  (*See* CD audio recording of 7/14/2009 status conference and RP II, 7/21/2009 Order.)  Sedillo attaches portions of these notes to his federal brief addressing the state court's denial of his alibi claim.  (*See* Doc. 124.)  The notes indicate that the investigator "tried to contact Yvette Chacon at her home.  She came to the door and told me she had nothing to say in the case.  She said she did not know anything and slammed the door on me." (*Id.*)  They also reflect that the investigator met with Sedillo and "spoke briefly about his alibi and how to prove it.  Gabriel stated that the only people who could say he was at the shop that afternoon are Peter and Yvette." (*Id.*)  "Although a habeas petitioner will be allowed to present 'bits of evidence' to a federal court that were not presented to the state court that first considered his claim, evidence that places the claims in a significantly different legal posture must be presented to the state courts." *Wilson v. Workman*, 577 F.3d 1284, 1294 (10th Cir. 2009) (internal quotations omitted).  Assuming that the investigator's notes are a "bit of evidence" proper for a federal court to consider, they do not establish deficient performance.  The notes establish only that trial counsel knew Sedillo considered Chacon an alibi witness.  They do not reflect what,

Sedillo's amended federal petition states that he "informed his trial counsel about Ms. Chacon's alibi

testimony so as to secure her testimony at trial to counter the State's evidence" and

"[n]otwithstanding the importance of Ms. Chacon's testimony, defense counsel never sought to

interview Ms. Chacon and did not subpoena her to testify at trial," (Doc. 61 at ¶ 5), Sedillo did not

present evidence to the state court regarding what, if anything, he told his counsel about Chacon's

possible testimony. Neither Sedillo nor trial counsel were called to testify on this point at the state

evidentiary hearing. Accordingly, the state court's determination that counsel's performance was

not deficient was not an unreasonable application of federal law.

Moreover, even if counsel's failure to subpoena Chacon was objectively unreasonable,

Sedillo has not demonstrated prejudice. Sedillo avers that "the only real witness on which the State

relied with any first-hand knowledge to inculpate Sedillo was Sammy Martinez" and "[w]ere the

jury to disbelieve Martinez's testimony, in whole or in part, Sedillo would have been acquitted,

because there was no other evidence tying Sedillo to the *actus reus*." (Doc. 124 at 10, 11.) This is

not true. Several state witnesses testified regarding Sedillo's actions on the day of the murder. Peter

Alcorta testified that, at some point, Rosales, Sedillo and the victim left Martinez's auto shop. (CD

recording of 5/21/2003 proceeding.) He did not see them leave but he knew they had left because

they were no longer at the shop and neither was the Blazer. (*Id.*) He also testified that he saw

Sedillo and Rosales in the Blazer after it returned and noticed that there was blood on the seats. (*Id.*)

Finally, as discussed previously, Alcorta testified that he, Martinez, and Sedillo took the Blazer to

a carwash. (*Id.*) Lydia Valencia also testified that she saw Sedillo, Martinez and a third man with

a tan colored Blazer at the carwash at around 4:15 to 4:30 p.m. on the day of the murder. (CD

---

if anything, Sedillo told his counsel regarding the content of her testimony such as when Chacon saw him at
the shop, for how long, or for what reason.

recording of 5/22/2003 proceeding.)  Valencia stated that Martinez was vacuuming the Blazer and Sedillo was walking in back of it, pacing up and down.  He looked nervous.  (*Id.*)  In short, other testimony placed Sedillo away from the shop on the afternoon of the murder, connected him to the bloody Blazer, and placed him at the carwash, consistent with Martinez's testimony.

Sedillo also argues that the weakness of the State's case is relevant to the prejudice determination.  (Doc. 132 at 3.)  He insists that the prosecution relied on

> compromised witnesses who were not eyewitnesses to the murder: Sammy Martinez (the State's main cooperating witness at trial who testified that it was in his vehicle that the murder of Wayne Sharp occurred, that he was with Sharp on the day of the murder, that he tampered with and destroyed evidence to cover up the murder, but that he did not participate in the murder itself); Peter Alcorta (nebulous timelines, foggy recollections, and ambiguous testimony); and Lydia Valencia (the lead investigator's wife).

(*Id.*)  Sedillo asserts that Chacon's testimony placed Sedillo "in an un-agitated state, in clean clothes, and miles away from the murder scene, in direct contravention of the testimony of the State's cooperating witness, Sammy Martinez."  (Doc. 124 at 1.)  However, Sedillo's proposed alibi witness, Yvette Chacon, was also not an eyewitness.  Her testimony relates to the timeline on the afternoon of the murder and, even if believed, it does not contradict the testimony of the State's witnesses.  The body was found around 4:00 p.m. only eight and a half miles from the shop.  Sedillo could have participated in the murder, returned to the auto shop in the bloody Blazer, and gone to the carwash with Martinez and Alcorta before seeing Chacon at the shop.  This timeline is consistent with time estimates provided by Martinez and Valencia, and with Chacon's testimony that she saw Sedillo around 4:00 or 5:00 p.m.  Chacon's testimony does not directly contravene Martinez's testimony or establish an alibi for Sedillo.  Consequently, Sedillo has not demonstrated that he was prejudiced by his counsel's failure to subpoena Chacon to testify and the state court's determination that counsel was not ineffective was not an unreasonable application of federal law.  I recommend

12

that Sedillo's amended petition be denied.

RESPONDENT'S MOTIONS TO DISMISS

Three motions to dismiss are currently pending in this case.  The first was filed on December 14, 2007, after Sedillo filed his amended petition but before Judge Johnson stayed the federal matter to allow Sedillo to exhaust state court remedies.  (*See* Doc. 64.)  Respondent argued that Sedillo had not exhausted his alibi claim in state court, resulting in a mixed petition that should be dismissed, and also that Sedillo had made unsubstantiated allegations and had failed to state a constitutional claim.  In light of the subsequent proceedings, including a stay and abeyance of the federal matter, exhaustion of state court remedies and a state court decision addressing the merits of the claim, these arguments are moot and the motion should be denied.

The remaining two motions were filed on January 23, 2009 and November 6, 2009, respectively.  (*See* Doc. 100, 119.)  In both, Respondent argues that Sedillo has failed to pursue his claim expeditiously in state court and that Sedillo's federal petition has been held in abeyance beyond the "reasonable time" contemplated by Judge Johnson when he stayed the case.  (*See* Doc. 100 at 1, Doc. 119 at 1.)   In the November 6, 2009 motion to dismiss, Respondent also argues for summary dismissal on the ground that Sedillo failed to state a meritorious constitutional claim.  (*See* Doc. 119 at 1.)

This case has been stayed in federal court since March 2008.  Although a survey of the procedural history of the case raises concerns regarding the diligence with which Sedillo's appointed counsel has pursued this matter,[5] the issue is now moot.  The alibi claim has been exhausted in state

---

[5] For example, the evidentiary hearing before Judge Smith was originally scheduled for February 19, 2008.  It was continued at Sedillo's request, in part because counsel had been unable to locate Yvette Chacon, although the State claims to have located her in July 2007 and informed counsel for Sedillo of her whereabouts at that time.  (*See* Doc. 78, Doc. 101 at 2.)  When Judge Smith held the evidentiary hearing on

court and the parties have briefed the state court decision.  I have reviewed the briefing, the state court decision and the record and herein make a recommendation to the presiding judge as to the merits of Sedillo's amended petition.  Accordingly, I recommend that the motions to dismiss be denied as moot.

CONCLUSION

For the reasons stated herein, I recommend that the stay be lifted, Respondent's three motions to dismiss (Doc. 64, 100, 119) be DENIED as moot and Sedillo's supplemental application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 61) be DENIED with prejudice.

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition.  If no objections are filed, no appellate review will be allowed.**

---

*William P. Lynch*
_____
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

---

March 11, 2008 counsel for Sedillo still had not been able to serve Chacon with a subpoena to appear at the hearing. (Digital Recording of 3/11/2008 hearing, beginning at 2:02 p.m.)  The parties agreed to stay the federal matter and Judge Smith admonished counsel to file the petition in state court "immediately, not months from now." (*Id.*)  Counsel did not file the petition until August 2008. (*See* Doc. 90, 92.)  The evidentiary hearing in state court was originally set for December 3, 2008.  It was continued at Sedillo's request because counsel claimed he was unable to subpoena Chacon at the New Mexico Women's Recovery facility where she was located. (RP II, 12/1/2008 Mot. Continue.)  After the hearing, counsel requested forty-five days to submit proposed findings and conclusions, so he would have time to locate the trial record. (CD recording of 2/11/2009 proceeding.)  On March 24, 2009, three days before his deadline, counsel requested the record. (RP II, 4/7/2009 Mot. Requesting Record.)  He did not request an extension of time to file his proposed findings but moved for a court order to obtain the record on April 7, 2009. (*Id.*)  Counsel finally filed a document entitled "Gabriel Sedillo's Memorandum in Support of His Habeas Corpus Motion with Respect to Alibi Witness Yvette Chacon" on July 14, 2009.  I find much of this delay inexplicable, but note that Respondent is not blameless: the State acquiesced to Sedillo's requests to continue the evidentiary hearings in both federal and state court. (*See* Doc. 79 and RP II, 12/1/2008 Mot. Continue.)