### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

GABRIEL JOHN SEDILLO, SR.,

      Applicant,

v.                                                                    CV 06-0640 WJ/WPL

TIM HATCH, WARDEN,

      Respondent.

### ORDER ADOPTING MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on two Proposed Findings and Recommended Dispositions (PFRD)—one by Magistrate Judge Smith (Doc. 26) and one by Magistrate Judge Lynch (Doc. 133)—Respondent's objections to Judge Smith's PFRD (Doc. 27), and Gabriel Sedillo's objections to both PFRDs (Doc. 30, 31, 134). Having conducted a *de novo* review, I find the objections to be without merit for the following reasons.

*Respondent's Objections to Judge Smith's PFRD*

Respondent does not object to Judge Smith's proposed dismissal with prejudice. He does object to the standard of review Judge Smith applied to those of Sedillo's claims that were summarily dismissed by the state district court on habeas review. (Doc. 27 at 2.) While Judge Smith recognized that the Tenth Circuit has held that even a summary dismissal of a petitioner's claims constitutes a dismissal on the merits requiring deference under AEDPA, he was concerned that *Torres v. Lytle*, 461 F.3d 1303 (10th Cir. 2006) limited this rule. (Doc. 26 at ¶¶ 35-36.) Judge Smith thus decided not to defer to the state court's summary dismissal when he reviewed these claims. However, he noted that if he were to afford deference as provided under AEDPA, he would reach the same disposition as to each claim. (*Id.*)

Because Judge Smith would reach the same disposition under either standard of review, and because I adopt his recommendation and dismiss these claims with prejudice, I need not determine which standard of review is proper.[1]  Accordingly, I find Respondent's objections moot.

***Sedillo's Objections to Document 26***

Judge Smith divided Sedillo's claims into two categories: those addressed by the New Mexico Supreme Court (NMSC) and those not addressed by the NMSC and summarily dismissed by the state district court on habeas review.  He rejected Sedillo's arguments and recommended that all of his claims be dismissed with prejudice.  Sedillo, proceeding *pro se*, filed lengthy objections to the report and recommendation.[2]  With regard to the claims addressed by the NMSC, Sedillo first challenged the sufficiency of the evidence to support his conviction.  Judge Smith noted that the NMSC had "reviewed the record for both direct and circumstantial evidence that might support 'a finding on each and every element' of the charge 'beyond a reasonable doubt.'"  (Doc. 26 at ¶ 16 (citing Doc. 8 Ex. G at 7-8).)  He agreed with the NMSC that there was "more than enough evidence for a reasonable jury to conclude that Petitioner 'intended to murder the victim, developed a plan, and executed it.'"  (*Id.* at ¶ 22 (citing Doc. 8 Ex. G at 8).)

In his objections, Sedillo claims that there was no physical evidence or substantive evidence to link him to the murder of Wayne Sharp.  (*See* Doc. 30 at 3-6.)  Sufficient evidence exists to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable

---

[1] Sedillo also states that he objects to this portion of the PFRD but does not explain the nature of his objections.  (*See* Doc. 30 at 10.)

[2] Judge Smith later appointed counsel for Sedillo to pursue one of his ineffective assistance of counsel claims.  Accordingly, counsel prepared Sedillo's objections to Judge Lynch's PFRD, which deals with that claim.  *See infra* at 17-18.

doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Rather than argue that, on the evidence presented, no rational trier of fact could have found the essential elements of the crime, Sedillo attacks certain evidence as hearsay and as fabricated testimony by the prosecution's key witness, Sam Martinez. He asserts that Martinez's testimony was impeachable and his trial counsel was ineffective for failing to investigate and prepare witnesses to impeach Martinez. He also attaches the defense investigator's notes regarding interviews with potential witnesses to establish what they would have said and suggests that these notes rebut the NMSC's findings. (*See* Doc. 30 Exs. 4-23.) Finally, Sedillo claims that the trial court erred by refusing to help him secure witnesses who would have provided exculpatory evidence and by excluding defense witnesses who would have impeached Martinez.

Sedillo's arguments regarding ineffective assistance of counsel and abuse of discretion by the trial court fail, as described below. However, even if they had merit, they could not support a claim for sufficiency of the evidence, as the record must be viewed in the light most favorable to the verdict. Accordingly, Sedillo has not shown that the NMSC's decision regarding the sufficiency of the evidence was contrary to or an unreasonable application of federal law.

Sedillo's second claim alleges ineffective assistance of counsel for failure to cross-examine and impeach Martinez. Judge Smith noted that the NMSC analyzed Sedillo's claim for ineffective assistance under a test equivalent to the federal *Strickland*[3] standard. (Doc. 26 at ¶ 28.) The NMSC determined that "defense counsel reasonably decided that Martinez's evasiveness was established and rationally chose not to question him further" and was "not persuaded of a reasonable probability of a different outcome but for the failure to impeach Martinez with this earlier statement about the

---

[3] *Strickland v. Washington*, 466 U.S. 668 (1984).

knife." (*Id.* at ¶¶ 29, 30 (quoting Doc. 8 Ex. G at 13) (internal punctuation omitted).) Judge Smith found that Sedillo's assertion that trial counsel failed to review Luis Rosales's trial tapes[4] to explore inconsistencies in Martinez's statements did not establish deficient performance, and that his conclusory statement that his attorney's failure to challenge false testimony was prejudicial was insufficient to establish prejudice. He concluded that the NMSC's decision was not contrary to or an unreasonable application of federal law.

In his objections, Sedillo repeats that Martinez's testimony was subject to cross-examination and impeachable because it differed from the testimony Martinez gave in Rosales's trial. (Doc. 30 at 6-7.) Sedillo asserts that trial counsel failed to use these inconsistent statements to impeach Martinez in front of the jury. Sedillo claims that he does not have trial transcripts from either trial and cannot show the court the facts needed to support his claim so he urges the court to review the trial transcripts of the entire Rosales trial and the entire Sedillo trial. Sedillo clearly believes that Martinez's testimony was inconsistent but he has not provided any basis for that belief. He may not be able to cite to the transcript, but he should be able to explain, in general terms, what Martinez said at Rosales's trial and what he said at Sedillo's trial, that supports Sedillo's claim that the testimony was inconsistent. Sedillo has not done this and thus has not shown how or why defense counsel's performance fell below an objective standard of reasonableness, or how he was prejudiced. In short, Sedillo has not shown that the NMSC's decision was contrary to or an unreasonable application of federal law.

In claim three, Sedillo argues that the trial court erred by failing to strike a juror for cause. Judge Smith explained that a trial judge's finding of impartiality is a finding of fact and presumed

---

[4] Luis Rosales, Sedillo's brother, was separately tried for the same murder.

correct on federal habeas review. (Doc. 26 at ¶ 32.) The NMSC noted that the juror's conflict applied to the prosecutor who conducted voir dire, not to the prosecutor who tried the case, and that the juror had assured the trial court that she could be fair and impartial. (Doc. 8 Ex. G at 16.) In light of these facts, the NMSC held that the trial court did not abuse its discretion by denying the challenge for cause. (*Id.*) Judge Smith concluded that the NMSC's decision was not contrary to or an unreasonable application of federal law. Moreover, he found that Sedillo failed to rebut the facts or the presumption of correctness.

Sedillo objects that "[s]ince the juror would feel obligated to either prosecution attorneys [sic] of Grant County, she would give a statement in regards to be impartial [sic], but she stated she has worked 'pretty closely' with the D.A. office [sic]." (Doc. 30 at 8.) This conclusory statement is insufficient to rebut the presumption of correctness given to the trial court's impartiality determination. Sedillo also claims that there is a "probability of 'presumption of prejudice' therefore the court errored [sic] to strike such juror for cause [sic]" (*id.*) but cites no law to support this standard. Again, Sedillo has not shown that the NMSC's decision was contrary to or an unreasonable application of federal law.

Judge Smith interpreted Sedillo's fourth claim as an argument that the trial court improperly limited the number of witnesses he could call in his defense as to issues of debt and threat. (Doc. 26 at ¶ 33.) Judge Smith noted that a trial court may limit the number of witnesses called to testify on a single point. He found that Sedillo presented nothing to suggest that the trial court's decision was incorrect, much less an abuse of discretion, and concluded that the decision of the NMSC, which held that Sedillo had not shown that the excluded witnesses would have added new information or additional probative value, was not contrary to or an unreasonable application of federal law.

Sedillo objects that he "can show that the excluded witnesses would have added new information or would have had additional probative value beyond the evidence admitted." (Doc. 30 at 9.) He claims that the trial court "had in front of them [sic] the motion to present witness list and the statements given to defence [sic] counsel's investigator and what key points of information that was relevant to [sic] impeach the witness on several key issues relating to the ongoing fabrication of state prosecution witness Sam Martinez." (*Id.*) Sedillo again cites to the investigator's notes of interviews with various potential witnesses attached to his objections as Exhibits 4-23. Again, Sedillo has not pointed to any specific statements to establish that excluded testimony would not have been cumulative and would have added probative value.

Sedillo also states that the magistrate judge's decision is contrary to and involves an unreasonable application of *Brady v. Maryland*, 373 U.S. 83 (1963) "[b]ecause the prosecution failed to disclose the defence witnesses [sic] testimony potentially statements that would of [sic] contradicted Sam Martinez testimony." (*Id.* at 9-10.) Sedillo has not previously raised a *Brady* claim and cannot do so for the first time in his objections. *See United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001). Moreover, the prosecution clearly does not have a duty to introduce evidence for the defense. Sedillo has failed to show that the NMSC's decision regarding the trial court's limit on defense witnesses was contrary to or an unreasonable application of federal law.

Judge Smith next reviewed Sedillo's claims that were not addressed by the NMSC and were summarily dismissed by the state district court on habeas review. In the first of these claims, Sedillo claimed that counsel was ineffective for failing to introduce certain testimony. Sedillo stated that trial counsel "fail[ed] to bring up testimony of Melissa Marufo concerning the day of investigation of 1/24/02" and that counsel "fail[ed] to call two (2) additional witness to corroborate the state's main witness was known to lie in the past . . . ." (Doc. 1 at 6A.) Judge Smith determined that this

-6-

claim lacked merit because these conclusory statements did not satisfy Sedillo's burden to establish deficient performance and prejudice under *Strickland*. (Doc. 26 at ¶ 38.)

In his objections, Sedillo complains that he cannot provide the facts necessary to back up his claim because his record is incomplete. For example, Sedillo suggests that in order to establish deficient performance he needs to produce the police reports or investigator's notes regarding Marufo's statement on January 24, 2002, the day he was arrested. (Doc. 30 at 10-11.) He claims that detectives asked Marufo several questions and she answered them and her statement should have been collected as evidence but is not part of the record proper. Sedillo insists that Marufo's statements constitute exculpatory evidence that would strengthen his defense and rebut Martinez's testimony about "having bloody clothes, clothes being changed, and about coveralls." (Doc. 30 at 11.)

As with Sedillo's claim that counsel was ineffective for failing to cross-examine and impeach Martinez (discussed above), Sedillo must have some reason for believing that Marufo's statements contain exculpatory evidence and could rebut Martinez's testimony. Even if he cannot cite to the police reports or the investigator's notes, Sedillo must at least aver facts to support his claim. He still has not suggested what Marufo likely would have testified to in court; therefore, he still has not established deficient performance or prejudice.

In his objections, Sedillo also asserts that, in his statement to the defense investigator, Daniel Jacquez reported that Martinez was a known liar. Even if this statement could support an inference of deficient performance, Sedillo has not made any argument regarding prejudice. Accordingly, Sedillo has not met his burden under *Strickland* with regard to this ineffective assistance claim.

In the second claim summarily dismissed on habeas, Sedillo argued that his trial counsel was ineffective for failing to investigate an alibi witness. Judge Smith found Sedillo's claim conclusory

and concluded that Sedillo had failed to establish deficient performance or prejudice. (Doc. 26 at ¶ 40.) In his objections, Sedillo detailed the testimony that the alibi witness would have provided. Under the circumstances, I referred the matter back to Judge Smith for further review and he appointed counsel. This claim is the subject of Judge Lynch's report and recommendation, Sedillo's objections to which are considered below.

In the third claim, Sedillo argued that his counsel was ineffective for failing to file pretrial motions of judicial misconduct. Judge Smith construed this claim to allege error by the trial court in admitting hearsay testimony, not judicial misconduct. (*See* Doc. 26 at ¶ 41 n.8.) However he evaluated it under the *Strickland* standard for ineffective assistance of counsel as opposed to evaluating the trial court's admission of hearsay testimony.[5] Sedillo's objections go to both facets of this claim: counsel's failure to file pretrial motions and the trial court's admission of hearsay testimony. Sedillo still has not supported any allegations of judicial misconduct.

Sedillo objects that counsel should have filed pretrial motions, particularly a motion to suppress Martinez's sworn and unsworn statements, which were inconsistent. (Doc. 30 at 14-15.) However, he does not describe the inconsistency or explain the basis for a motion to suppress. He also suggests that the state failed to impeach Martinez. Again, the state clearly does not have a duty to impeach its own witness. Sedillo goes on to say that his attorney did not object to Martinez's statement regarding Sedillo's involvement in the murder; however, he immediately contradicts himself by saying that the "judge overruled and allowed such statement to go uncorrected." (Doc. 30 at 15.) Thus, Sedillo acknowledges that trial counsel did make an objection. Sedillo has not established deficient performance or prejudice.

---

[5] Sedillo separately challenged the trial court's admission of hearsay evidence in his eighth claim, which is discussed below.

Sedillo also complains about hearsay testimony from Martinez regarding what Luis Rosales said. Sedillo objects that Rosales was available to rebut and testify in person. Sedillo insists that "[t]here must be a showing of unavailability to allow hearsay testimony to fall under the hearsay rules" and the admission of hearsay testimony "may very well violate Petitioner's confrontation clause rights . . . ." (Doc. 30 at 16.) However, again, Sedillo goes on to say, "Since counsel did object and such objection might have changed the result of the proseedings [sic], petitioner could of stated [sic] a claim warranting further review based upon an inference of deficient performance and prejudice." (*Id.*)

Counsel's objections or lack thereof to hearsay testimony at trial, and the trial court's decision to admit such testimony have no bearing on counsel's failure to file pretrial motions. Accordingly, Sedillo's objections lack merit to the extent they relate to a claim for ineffective assistance for failure to file pretrial motions. To the extent they relate to a claim of error by the trial court in admitting hearsay testimony, his objections also fail, as discussed below with regard to claim eight.

Sedillo's fourth claim alleged ineffective assistance of counsel for failure to instruct the jury on the specific intent element of first degree murder and on a lesser included offense. Judge Smith noted that, in New Mexico, the trial court, not counsel, instructs the jury. (Doc. 26 at ¶ 44.) He also noted that Sedillo had not argued that the jury instructions were improper and there was no basis to infer deficient performance or prejudice. Moreover, Judge Smith found that Sedillo had asserted nothing to establish that he was entitled to a lesser included offense instruction.

In his objections, Sedillo asks the court to excuse him for mistaking the source of jury instructions. He then asserts that trial counsel did offer a lesser included offense instruction and an instruction on specific intent, but the trial court rejected those instructions. (Doc. 30 at 17 & Ex.

25.) He therefore urges that his claim is that the "trial judge abused his power for not allowing the proper jury instructions on 'specific intent' and on a lesser included offense." (*Id.* at 19.) Sedillo goes on to argue that he was found guilty "solely on Sam Martinez's statements of first degree murder," which was clearly a "violation of his constitutional rights because false testimony was given to the jury without the proper instruction." (Doc. 30 at 17-18.) Sedillo still has not argued that the instructions that were given were improper in any way and thus has not established deficient performance or prejudice on this ground. Moreover, Sedillo still has asserted nothing to establish that he was entitled to a lesser included offense instruction.

Fifth, Sedillo claimed that trial counsel was ineffective for failing to ask for a mistrial when the defense investigator caught a police detective coaching Martinez. Again, Judge Smith found Sedillo's allegations conclusory and determined that, even assuming that trial counsel was aware of the coaching, Sedillo had failed to show that the detective's signals altered the witness's testimony or demeanor or the jury's perception of that testimony. (Doc. 26 at ¶ 47.) In his objections, Sedillo explains that the police detective had colored pens in each hand and would wave them back and forth to signal the answer. Sedillo alleges that "Martinez would get asked yes or no questions and he would look directly over to the prosecution table at [the detective] and would give him a colored pen signal to yes or no" and then Martinez would answer. (Doc. 30 at 20.) Sedillo further states that trial counsel was indeed aware of the coaching, as Sedillo first discovered it then notified the defense investigator who watched the coaching take place and advised trial counsel who asked for a short break and approached the bench. Sedillo claims that the judge was notified but his counsel "failed to ask for a mistrial right there and then." (*Id.*) With regard to prejudice, Sedillo argues that if the judge and lawyers would have agreed that Martinez committed perjury under oath by being coached to answer the questions, then he would have been granted a mistrial.

Sedillo's objections do suggest that defense counsel was aware of the coaching and that the witness saw the detective's signals and reacted to them. While the record does not reflect that trial counsel moved for a mistrial, it does reflect a bench conference at which defense counsel can be heard asking the trial judge to instruct the detective not to nod his head as he was coaching the witness. (*See* Record Proper (hereinafter "RP"), CD audio recording of 5/21/2003 trial.) Sedillo does not clam that the coaching altered either the witness's testimony or his demeanor or the jury's perception of the testimony. There is no indication that the coaching continued after the bench conference. I agree with Judge Smith that Sedillo has not shown deficient performance or prejudice.

In claim six, Sedillo alleged that the prosecution failed to preserve evidence when it surrendered a vehicle back to Martinez, knowing it contained DNA evidence that did not belong to Sedillo, Rosales or the victim. Judge Smith found that Sedillo had asserted nothing to show that the unidentified DNA was material exculpatory evidence or to show how the presence of any other DNA may have exonerated him. (Doc. 26 at ¶ 49.) Judge Smith also determined that Sedillo had not shown how the state acted in bad faith when it surrendered the vehicle.

Sedillo objects that trial counsel filed a motion for preservation of evidence, which the trial court granted. He asserts that "this clearly shows bad faith on the part of police detectives to [sic] failure to preserve potentially useful evidence." (Doc. 30 at 23.) Moreover, Sedillo claims that the unidentified DNA blood found in the vehicle was mixed with the victim's and Sedillo and his brother Rosales were excluded as the source of that blood mixture. He also states that "the vehicle was material exculpatory evidence towards defence [sic]" and also "impeachable evidence to prove Sam Martinez testimony is not realiable [sic]." (*Id.* at 24.)

While Sedillo did attach a copy of a "Demand for Preservation of Evidence" to his objections, the "Stipulated Order on Defense Motions" that he provides does not indicate that this

demand was granted. (*See* Doc. 30 Ex. 26.) However, the record proper contains a "Second Stipulated Order on Defense Motions," which states that the motion for preservation of evidence "is granted, in view of the stipulation of the defense that no evidence was destroyed by reason of the processed Martinez vehicle being returned to its owner." (RP at 150.) Given this order and stipulation of the defense, it is clear that Sedillo's claim that the prosecution failed to preserve evidence must fail.

In his seventh claim, Sedillo alleged that the prosecution presented false testimony. Judge Smith again found Sedillo's allegation conclusory because he did not assert that "the prosecutor may have knowingly introduced false testimony and that the testimony likely affected the judgment of the jury." (Doc. 26 at ¶ 51.) In his objections, Sedillo states that his "factual assertion is that prosecutor may have knowingly introduced false testimony and that the testimony likely did affected [sic] the judgment of the jury." (Doc. 30 at 25.) He then purports to state "further facts showing specifically what testimony was false and his basis for believeing [sic] that the prosecution knew the testimony was false, yet introduced it anyway." (*Id.* at 25-26.)

Sedillo asserts that Detective Jimenez obtained two arrest warrants for Sedillo and Rosales based on hearsay statements given by Martinez. He contends that Martinez's second statement to police on January 23, 2002 was inconsistent with his first statement on January 20, 2002. According to Sedillo, Martinez's testimony at Rosales's trial also was different from his testimony at Sedillo's trial and preliminary proceedings. Sedillo then complains that his trial counsel asked the trial judge "to move to impeach Sam Martinez because he was caught several times under oath changing his testimony and not telling the truth," but the trial judge indicated that he would let the jury decide if Martinez was telling the truth or not. (Doc. 30 at 28.) Sedillo concludes, "Therefore prosecution knowingly allowed such perjured testimony to be presented which is prosecutorial misconduct . .

. .." (*Id.*)  Sedillo urges that the outcome of the trial would have been different if Martinez's testimony had been excluded, because there would have been "no creditable [sic] evidence" to convict Sedillo or Rosales.  (*Id.* at 28-29.)

At the same time that he complains of inconsistency and hearsay testimony by Martinez, Sedillo acknowledges that "hearsay statements are allowed into evidence only for the purpose to make an arrest warrant and search warrant not under oath" and that "a prior statement of a witness which is inconsistent with his testimony is of course always admissible for the purpose of impeaching the witness credibility."  (Doc. 30 at 26, 27.)  Sedillo still has not shown that the prosecution may have knowingly introduced false testimony and that the testimony affected the judgment of the jury.  The fact that Martinez's statements were inconsistent does not necessarily mean they were false.  Sedillo has not pointed to any particular statement and averred facts to show that it was false.  Moreover, assuming that the prosecution was aware that Martinez's statements were inconsistent, there is no evidence that the prosecution was aware that it was false.  Again, the prosecution is not obliged to impeach its own witness.

In claim eight, Sedillo argued that the trial judge improperly allowed hearsay testimony from Martinez, thereby violating Sedillo's right to confrontation.  Judge Smith found that Sedillo's allegations were insufficient to maintain his claim because he did not specify which statements were improperly admitted hearsay or his basis for believing that those statements were improperly admitted. (Doc. 26 at ¶ 53.)  In his objections, Sedillo specifies two statements by Martinez.  In the first, Sedillo claims that Martinez testified that "Luis [Rosales] told me Gabriel [Sedillo] stabbed him in the heart."  (Doc. 30 at 29.)  In the second, Martinez testified that "Gabriel told me himself that Wayne bucked pretty good and so he stabbed him in the heart."  (*Id.* at 30.)  Sedillo now urges that "declarant was available for trial, for the fact Rosales was incarserated [sic] and could of been

brought from the Department of Corrections of New Mexico," and "would of testified that those statements by Sam Martinez was false [sic]." (*Id.*) Sedillo argues that neither the judge nor state prosecutor made any attempt to show any unavailability on the part of Rosales so the trial court improperly admitted this testimony.

Martinez's testimony regarding what Sedillo told him is not hearsay under Federal Rule of Evidence 801. Thus, the basis for Sedillo's confrontation clause claim must be Martinez's testimony regarding what Rosales told him about what Sedillo did. I have reviewed the audio recording of the trial and was unable to locate any such testimony. (*See* RP audio recording from 5/21/2003.) Nevertheless, even assuming that Martinez did testify as Sedillo asserts, such a nontestimonial statement by Rosales does not violate the Confrontation Clause. *See United States v. Smalls*, 605 F.3d 765, 780 (10th Cir. 2010) (explaining that the Confrontation Clause simply does not apply to nontestimonial statements).

Finally, in his ninth claim, Sedillo asserted that his right to a speedy trial was violated. Judge Smith interpreted Sedillo's petition as arguing that his trial was delayed more than thirteen months. He applied the four factor balancing test of *Barker v. Wingo*, 407 U.S. 514 (1972).[6] (Doc. 26 at ¶ 55.) Even assuming that the thirteen month delay was presumptively prejudicial, Judge Smith noted that Sedillo had provided nothing for the Court to weigh the remaining three factors. (*Id.*) In his objections, Sedillo explains that he was arrested on January 24, 2002, and arraigned on April 1, 2002. His attorney presented a motion for a speedy trial on February 4, 2002. With regard to *Barker*'s four factor test, Sedillo claims that 1) a sixteen month delay (from the date of arraignment)

---

[6] In *Barker*, the Supreme Court identified the following four factors to be assessed when determining whether a defendant has been deprived the right to a speedy trial: the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. *Id.* at 530.

was presumptively prejudicial, 2) the New Mexico Supreme Court occasionally grants six month extensions for complex cases, but in this case, the Court erred in granting an eight month extension, without Sedillo's knowledge or consent and without sufficient reason because the state had finished its investigation of the case, 3) he asserted his right to speedy trial by motion on February 4, 2002, and  4) the state intended to gain a tactical advantage or harass Sedillo and "delays approaching but not exceeding one year are [] generally presumptively prejudicial."  (Doc. 30 at 33.)

Although Sedillo has provided more information with which to evaluate the *Barker* factors, his claim still fails, principally because defense counsel either stipulated to, or requested, the various extensions which resulted in the delay.  Trial counsel did file a demand for speedy trial on January 28, 2002.  (RP at 38.)  Trial was set for the August 2002 trial docket.  (RP at 93-94.)  In July, the trial court granted Sedillo's stipulated motion to continue trial to the November 2002 trial docket.  (RP at 127-29.)  In September, the trial court granted the state's unopposed motion to continue the time for commencement of trial from October 1, 2002 to January 1, 2003.  (RP at 131-33.)  In October, the trial court granted Sedillo's unopposed motion to continue the trial date from the November trial docket to the next available trial calendar.  (RP at 134-37.)  The record also contains an order dated November 22, 2002 from the NMSC, which indicates that it "[came] on for consideration by the Court upon Petition of Gabriel Sedillo by and through the District Court for the Second Judicial District, for an extension of time pursuant to Rule 5-604 of the District Court Rules."  (RP at 138.)  The NMSC granted an extension for the commencement of trial until July 1, 2003.  Trial was set to begin February 24, 2003; however, on February 18, 2003, defense counsel again moved to continue the trial due to illness.  (RP at 149, 166-67.)  As a result trial was continued until May 2003, and eventually commenced on May 20, 2003.  (RP at 173, 176.)

Because the delay in Sedillo's trial was due, in large part, to requests for extension of time by the defense or to stipulated agreement, Sedillo's arguments regarding the third and fourth *Barker* factors fail. Sedillo has not established a deprivation of his right to a speedy trial.

Throughout his objections, Sedillo repeatedly makes reference to the "Criminal Act" and the "Criminal Act for *pro se* litigants." (*See, e.g.*, Doc. 30 at 12, 18, 21.) He asks for the court's assistance under the Criminal Act to obtain transcripts, facts, and affidavits to support his claims, alleging that his record is incomplete. Sedillo is likely referring to the Criminal Justice Act, which provides for appointment of counsel and investigative, expert, and other services for an eligible person seeking relief under 28 U.S.C. § 2254, when the court determines that the interests of justice so require. *See* 18 U.S.C. § 3006A(a)(2). Because Sedillo has not averred the facts necessary to support many of his claims, he has not shown that the interests of justice require appointment of counsel for these claims. With regard to one claim, Judge Smith did appoint counsel to pursue Sedillo's assertion of ineffective assistance for failure to investigate an alibi witness. That claim is discussed below.

Sedillo closes his objections to Judge Smith's PFRD by asking for an evidentiary hearing. A habeas petitioner can obtain an evidentiary hearing in federal court only by 1) showing that he was diligent in developing the factual basis for his claim in state court and 2) asserting a factual basis, that, if true, would entitle him to habeas relief. *See Sandoval v. Ulibarri*, 548 F.3d 902, 915 (10th Cir. 2008) (internal citations omitted). Thus, "an evidentiary hearing is unnecessary if the claim can be resolved on the record." *Id.* Because Sedillo's claims can all be resolved on the record, an evidentiary hearing is not required in this case.

*Sedillo's Objections to Judge Lynch's PFRD*

Judge Lynch's PFRD addresses Sedillo's claim that his counsel was ineffective for failing to investigate and procure a key alibi witness. A state district court held an evidentiary hearing and made factual findings regarding this claim. It concluded that it was not objectively unreasonable for Sedillo's counsel not to subpoena or call Yvette Chacon (the alibi witness), considering her lack of cooperation and counsel's inability to find out what she knew. (Doc. 110 Ex. 1 at ¶ 8.) The state court also concluded that Sedillo had failed to establish a reasonable probability that the result of the trial would have been different, had she been called. (*Id.* at ¶ 9.)

Judge Lynch found that Sedillo had not overcome the presumption of correctness to which the state court's findings of fact are entitled. (Doc. 133 at 8.) He also determined that Sedillo had failed to show that trial counsel knew anything about the potential content of Chacon's testimony that would make counsel's failure to subpoena her unreasonable and that, even if counsel's performance was objectively unreasonable, Sedillo had not demonstrated prejudice. (*Id.* at 10, 11.) Judge Lynch concluded that the trial court's decision was not an unreasonable application of federal law.

Sedillo objects that the magistrate judge's finding is flawed in its focus on whether trial counsel knew anything about the content of Chacon's testimony. Sedillo insists that trial counsel knew that Chacon was an alibi witness and was ineffective, not in failing to investigate Chacon's testimony, but in failing to subpoena her when she refused to cooperate. However, an analysis of defense counsel's failure to subpoena Chacon must take into account what counsel knew about the alibi. If, for example, Sedillo had provided his attorney with details about the alibi testimony, such as when Chacon saw him at the shop, for how long, and for what reason, then Chacon's insistence that she knew nothing and defense counsel's failure to subpoena her would have been more

-17-

questionable. However, Sedillo has not offered any evidence to suggest that his counsel knew the importance of Chacon's testimony. Sedillo has averred the following facts with regard to defense counsel's knowledge of Chacon: 1) Sedillo believed she was an alibi witness and 2) she was one of two people who could say that Sedillo was at the shop that afternoon. (Doc. 1 at 6A, Doc. 24.)

With this knowledge, defense counsel sent an investigator to talk to Chacon. At the state evidentiary hearing, Chacon testified that she "didn't know anything and didn't think anything [she] had to say was going to help [Sedillo]." (Doc. 133 at 5.) She also stated that if she had known something that would have helped Sedillo, she would have come forward and testified at trial. (*Id.*) Without knowing what Chacon might say on the witness stand, and without any evidence from Sedillo regarding what he thought Chacon might say on the witness stand, defense counsel's failure to subpoena her simply cannot be considered unreasonable.

Moreover, even if counsel's performance was deficient, Sedillo has not shown prejudice. Repeating his arguments based on an unpublished Tenth Circuit case, Sedillo contends that the strength or weakness of the state's case is relevant to the prejudice determination. Sedillo alleges that, because there was no victim identification, no physical evidence, and the state relied on compromised witnesses, Chacon's testimony "might have tilted the scales in favor of acquittal." (Doc. 134 at 3-4 (citing *Holmes v. McKune*, 59 F. App'x 239, 254 (10th Cir. 2003)).) However, even assuming that Chacon had testified at trial, her testimony as given at the state evidentiary hearing was not inconsistent with the state's evidence and did not establish an alibi. Sedillo thus has not shown a reasonable probability that the result of the trial would have been different, had she been called. Accordingly, Sedillo has not demonstrated that the state court's decision was contrary to or an unreasonable application of federal law.

IT IS THEREFORE ORDERED that:

1) the stay is lifted;

2) Judge Smith's Proposed Findings and Recommended Disposition (Doc. 26) are adopted by the Court;

3) the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 By a Person in State Custody (Doc. 1) is denied;

4) Respondent's Amended Motion to Dismiss (Doc. 18) is granted;

5) Judge Lynch's Proposed Findings and Recommended Disposition (Doc. 133) are adopted by the Court;

6) the Supplemental Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 By a Person in State Custody (Doc. 61) is denied;

7) Respondent's Motions to Dismiss (Doc. 64, 11, 119) are denied as moot; and

8) this cause is dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE